*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 08a0218p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

No. 07-1883

FRANK HENRY HALL,

*Defendant-Appellant.*

>

Appeal from the United States District Court
for the Eastern District of Michigan at Flint.
No. 05-50078—Paul V. Gadola, District Judge.

Argued: June 3, 2008

Decided and Filed: June 24, 2008

Before: MERRITT, CLAY, and GILMAN, Circuit Judges.

---

## COUNSEL

**ARGUED:** Kenneth Robert Sasse, FEDERAL DEFENDER'S OFFICE, Flint, Michigan, for Appellant. Kathleen Moro Nesi, ASSISTANT UNITED STATES ATTORNEY, Detroit, Michigan, for Appellee. **ON BRIEF:** Kenneth Robert Sasse, FEDERAL DEFENDER'S OFFICE, Flint, Michigan, for Appellant. Robert W. Haviland, ASSISTANT UNITED STATES ATTORNEY, Flint, Michigan, for Appellee.

---

## OPINION

---

RONALD LEE GILMAN, Circuit Judge. Frank Henry Hall pled guilty to being a felon in possession of a firearm. In his plea agreement, Hall reserved the right to contest his criminal history category under the United States Sentencing Guidelines (U.S.S.G.). He subsequently filed a sentencing memorandum objecting to the addition of one criminal history point for each of two prior misdemeanor convictions. The district court, however, determined that Hall's prior misdemeanor convictions should be counted under U.S.S.G. § 4A1.2(c)(1) because each sentence was for a term of imprisonment of at least 30 days.

Hall now renews his argument that his two prior misdemeanor offenses should not have been counted because in both instances he was given full credit for time served on earlier unrelated offenses and, therefore, he did not actually serve any time in prison for the misdemeanors in question. For the reasons set forth below, we **REVERSE** the judgment of the district court and **REMAND** the case for resentencing consistent with this opinion.

1

## I. BACKGROUND

In March of 2007, Hall pled guilty to one count of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). He entered into a plea agreement in which he agreed to a net offense level of 17, but reserved the right to contest his criminal history category. The parties also agreed that "the sentence of imprisonment in this case may not be less than the bottom, nor more the mid-point of the sentencing guideline range."

According to the Presentence Report (PSR), Hall had a total of eight criminal history points, which would establish a criminal history category of IV. Both the PSR and the worksheets attached to the plea agreement calculated the appropriate Guidelines range to be 37 to 46 months of imprisonment. Hall subsequently filed objections to the PSR in which he contested the PSR's calculation of his criminal history category. In particular, Hall disputed the addition of two criminal history points, pursuant to U.S.S.G. § 4A1.2(c)(1), for his two prior misdemeanor convictions.

The first misdemeanor conviction at issue was Hall's January 2002 guilty plea for driving with a suspended license. That conviction followed a series of events that took place between the summer of 2001 and January of 2002. In June of 1999, Hall had been sentenced to a three-year term of probation for assault with a dangerous weapon and possession of a short-barreled shotgun. On July 29, 2001, Hall was arrested for driving with a suspended license by the Clio, Michigan police. A separate violation-of-probation warrant was issued on November 11, 2001. Hall was arrested on the probation-violation warrant in Florida on December 23 of that year.

On January 23, 2002, Hall pled guilty to the suspended-license charge and was sentenced to 30 days' imprisonment. The judge, however, gave Hall full credit for the time that Hall had been in custody on the probation-violation warrant. Because he had violated his probation on the underlying weapons convictions, Hall was returned to custody and remained in prison until May 15, 2004. The PSR added one criminal history point for Hall's suspended-license conviction.

Hall was subsequently taken into custody on May 28, 2004 on a completely new charge of violating his parole. On June 30, 2004, he pled guilty to hindering a police officer and was sentenced to 35 days in jail, but was again fully credited with time already served on the parole-violation charge. The PSR added one criminal history point for Hall's "hindering" conviction.

In his objections to the PSR, Hall argued that because he was given full credit for time already served on prior unrelated convictions, he had not actually served a period of imprisonment on either of the misdemeanor charges in question. Based on the official commentary to U.S.S.G. § 4A1.2, Hall contended that those convictions should not be counted in calculating his criminal history category. *See* § 4A1.2 cmt. n.2 (providing that a defendant must "actually serve[]" a period of imprisonment on such sentence to have it qualify as "a sentence of imprisonment"). Hall therefore argued that he had a total of six, rather than eight, criminal history points; that his criminal history category should therefore be III rather than IV; and that the appropriate Guidelines range was in fact 30 to 37 months of imprisonment, instead of 37 to 46 months, on his felon-in-possession charge.

At Hall's original sentencing hearing, the district court ordered the parties to file additional briefing on the question of whether Hall's prior misdemeanor convictions should be counted under U.S.S.G. § 4A1.2(c)(1). It then continued the hearing. At the second hearing, the court adopted the reasoning of the Seventh Circuit in *United States v. Staples*, 202 F.3d 992 (7th Cir. 2000), and concluded that the PSR's calculation of one criminal history point for each of Hall's misdemeanor convictions was correct. Hall was then sentenced to 41 months of imprisonment. This timely appeal followed.

## II. ANALYSIS

There are no material facts in dispute in the present case. The parties instead disagree as to whether Hall's prior misdemeanor convictions should be counted under U.S.S.G. § 4A1.2(c)(1), which allows such offenses to be counted only if "the sentence was . . . a term of imprisonment of at least thirty days." "Questions involving the interpretation of the guidelines are legal questions that this Court reviews *de novo*." *United States v. Murphy*, 241 F.3d 447, 458 (6th Cir. 2001).

Hall contends that his prior misdemeanor convictions should not have been counted under § 4A1.2(c)(1) because he "spent no time in custody on either conviction." In support of this argument, he points to the language in the official commentary to § 4A1.2, which states that "[t]o qualify as a sentence of imprisonment, the defendant must have actually served a period of imprisonment on such sentence." § 4A1.2 cmt. n.2. For both of the misdemeanor convictions at issue, Hall was given full credit for time already served on a different charge—i.e., credit for the suspended-license conviction due to an earlier probation-violation sentence, and credit for the hindering-a-police-officer conviction due to a separate parole-violation sentence. He claims, therefore, that he did not "actually serve a period of imprisonment" on either of the two misdemeanor convictions and that "[t]here is simply no reason to now treat the convictions any differently than if he had received custody sentences of less than 30 days."

Hall also relies on *Murphy*, 241 F.3d 447. In that case, Murphy had two prior misdemeanor convictions for which he was sentenced to four months of imprisonment. The district court added four criminal history points when calculating his criminal history category pursuant to U.S.S.G. § 4A1.1(b), assessing two points "for each prior sentence of imprisonment of at least sixty days." Murphy argued that the district court erred in adding the points because the court had "concluded that he did not serve any term of imprisonment for either conviction." 241 F.3d at 459. The government, in contrast, contended that the assessment of the additional points was proper even if Murphy had not "actually serve[d] the term of imprisonment." *Id.*

Relying on the same language cited by Hall, the *Murphy* court rejected the government's contention. It reasoned that

> the guidelines do mandate that a defendant must have served at least some time in order for his conviction to be considered a "sentence of imprisonment." § 4A1.2 cmt. n.2. If Defendant has served a portion of the sentence, then for purposes of calculating a defendant's criminal history category, the focus is the actual sentence pronounced, not the length of time actually served. *See id.*

241 F.3d at 459. The court concluded that the record was unclear as to whether Murphy had "served a portion of the four-month term for either of his misdemeanor convictions or whether Defendant served no time at all for the terms sentenced." *Id.* It therefore remanded the case so that the district court could make this factual determination, and further explained that if Murphy "served at least one day of the four-month imprisonment term," then the sentencing district court had not erred in assessing the two points under § 4A1.1(b). *Id. Murphy* thus informs us that if a defendant is found to have "served no time at all," then his conviction should not be considered "a sentence of imprisonment." *Id.*

Hall argues that because he did not serve any time at all on his prior misdemeanor convictions, the district court erred in adding two criminal history points to his Guidelines calculation. The government, on the other hand, asserts that Hall's statement that he did not serve any time on either of the contested misdemeanor convictions "simply begs the question [of] whether time served on another charge and credited toward the sentence at issue is 'time served' on the latter." It contends that because *Murphy* did not address whether a defendant must serve "new,

additional" time on a sentence in order to have "actually served" time for that sentence, that case "lends no weight whatever" to Hall's argument. Contrary to the government's argument, we believe that *Murphy* supports Hall's position, even if it is not conclusive.

Like the district court, the government relies on the Seventh Circuit's decision in *United States v. Staples*, 202 F.3d 992 (7th Cir. 2000). Both parties agree that *Staples* is the only decision to have directly addressed whether credit for time served on a prior unrelated offense qualifies as a "term of imprisonment" under U.S.S.G. § 4A1.2(c)(1), so the case warrants detailed discussion.

In *Staples*, the defendants pled guilty to possessing crack cocaine with the intent to distribute the drug. When calculating Staples's criminal history category, the district court added criminal history points pursuant to U.S.S.G. § 4A1.2(c)(1) on the basis of a prior misdemeanor conviction for driving on a suspended driver's license. That misdemeanor charge stemmed from events that took place in 1997, but was not adjudicated until after Staples had served a 250-day sentence for a probation violation stemming from a domestic-battery conviction. Upon his release from jail, Staples pled guilty to the suspended-license charge and was sentenced to 250 days in jail. He was given full credit, however, for the time that he had served on the probation-violation charge. In the subsequent drug case, Staples claimed that his suspended-license conviction should not be counted under U.S.S.G. § 4A1.2(c)(1) because "he was sentenced to 'time previously served' and did not actually serve any of his sentence for driving on a suspended license." 202 F.3d at 997.

The *Staples* court thus faced the identical question that is currently before us: "whether time 'actually served' includes 'time previously served.'" *Id.* That court answered the question in the affirmative, rejecting Staples's argument that he had not actually served any time on the misdemeanor sentence:

> The plain language of § 4A1.2(c)(1) indicates that a conviction is counted if the "sentence was . . . a term of imprisonment of at least 30 days." According to the PSR, Staples' sentence was "250 days jail, $300 fine and costs." Neither the Guidelines nor Staples' sentence make a distinction as to how or when the defendant must serve the sentence, such as receiving time off for good behavior, surrendering voluntarily at some future date or getting credit for time spent awaiting trial. The simple meaning of the Guidelines language is to count any sentence "of at least 30 days," and this section is unconcerned with how or when the sentence "of at least 30 days" is served so long as it is a "term of imprisonment." The sentencing judge may have agreed that Staples had already served the required time and therefore released him, but the judgment that he serve 250 days in jail stood.

202 F.3d at 997 (citation omitted).

Staples's argument that the language in the official commentary to § 4A1.2 required the opposite result was rejected:

> Staples looks to the application notes for a definition of "sentence of imprisonment," which he finds in Application Note 2. But as the government points out, that note specifically references two Guidelines sections dealing with suspended sentences, *see* § 4A1.2(a)(3), (b)(2), which in this situation are very different from a sentence crediting time already served. With a suspended sentence, the offender may never spend a day in jail. The sentence hangs over his head as a way to ensure compliance with the terms of probation or other court orders. Credit for time served evinces the court's determination that the offender must spend some time in jail but has already served that time, either awaiting trial or on some other offense. It is a way to avoid

No. 07-1883          *United States v. Hall*          Page 5

excessive or duplicative punishment but does not reflect the court's determination that this offense is so minor that no jail time is warranted.

*Id.*

Furthermore, the *Staples* court distinguished the decision in *United States v. Stewart*, 49 F.3d 121 (4th Cir. 1995), where the Fourth Circuit concluded that the 24 days that Stewart spent in jail awaiting a parole-revocation hearing should not be counted as a sentence of imprisonment because his parole was not ultimately revoked. The *Stewart* court, in making this determination, relied on the fact that Stewart's incarceration had been "administrative in nature" rather than an actual punishment. *Id.* at 125. It also explained that "to allow such an assessment of criminal history points would be to allow Stewart to be penalized for something for which the state authorities themselves decided not to punish him." *Id.*

The *Staples* court, however, reasoned that

[h]ad Staples been held without bail while awaiting trial, that time could not be counted as a sentence of imprisonment, but being given credit for time served on another offense is a different story. It reflects the seriousness of the offense and appropriately should be counted as a qualifying term of imprisonment for purposes of § 4A1.2(c)(1).

*Staples*, 202 F.3d at 998. The government urges us to reach the same result as did the Seventh Circuit, arguing that the *Staples* court's reasoning is persuasive and uncontradicted by any other legal authority. To the contrary, we believe that the proper analysis is exactly the opposite of the above quotation from *Staples*, as reflected in the reasoning of the Eleventh Circuit's opinion in *United States v. Buter*, 229 F.3d 1077 (11th Cir. 2000).

Although neither party cited *Buter*, perhaps because it deals with a different subsection of U.S.S.G. § 4A1, the case is squarely on point by analogy. In *Buter*, the defendant argued that he had been assessed too many criminal history points pursuant to § 4A1.1(a) (requiring the addition of three criminal history points "for each prior sentence of imprisonment exceeding one year and one month"). The district court had added points for two state probation violations, for which Buter had been sentenced to terms of imprisonment, but where the state sentencing court had "ordered the accrual of those terms concurrent with a federal sentence that Buter had served previously." *Id.* at 1078. Relying on the "actually served" language in the commentary of § 4A1.2, Buter argued that "because he was never actually confined for these offenses, neither should be deemed a sentence of imprisonment." *Id.*

The Eleventh Circuit agreed with Buter, concluding that the convictions could not be counted under U.S.S.G. § 4A1.1(a):

The critical question is whether he actually served time on those sentences. We must answer this question in the negative. Buter walked into and out of the state courtroom a free man. He did not spend one moment in custody or confinement for the sentences imposed by the state court for his probation violations. Instead, that court chose, as was its prerogative, to allow for the disposition of the probation violations by giving credit for time served in a prior, totally unrelated case.

. . . .

It is patently unreasonable to punish a defendant by adding three points in the sentencing equation for a sentence which had no detrimental repercussions whatsoever, either in the past or in the future . . . .

229 F.3d at 1079.

Moreover, the court in *Buter*, unlike the *Staples* court, considered the decision in *Stewart*, 49 F.3d 121, to be "enlightening." *Buter*, 229 F.3d at 1079. The *Buter* court thus analogized the circumstances before it to those in *Stewart*, reasoning that assessing criminal history points for prior offenses where no time was actually served "would be penalizing Buter for something which the state authorities determined was not deserving of further incarceration." *Id.*; *see Stewart*, 49 F.3d at 125.

*Buter*'s reasoning directly contradicts that advanced in *Staples*, and we find the former to be the more persuasive. Cold reality informs us that a defendant who receives full credit for time served on an entirely separate conviction does not in fact "actually serve" any time for the offense in question. Stated in mathematical terms, plus 30 (days to be served) minus 30 (days' credit) equals zero (days actually served). Imposing a prison sentence without requiring that any time be actually served, in other words, is empty rhetoric for the purposes of the federal Sentencing Guidelines.

The attempt to equate credit for time served awaiting trial on the offense in question with credit for time served on a different offense is likewise unpersuasive. Common sense dictates that time served awaiting trial for the offense in question, and *not* time served for a wholly separate offense, should be considered time "actually served" under the Guidelines because that time is directly linked to the sentence ultimately imposed. The government's argument that a favorable ruling for Hall will create "anomalous results" with regard to concurrent sentences or credit for pretrial detention fails to acknowledge that there are important conceptual distinctions between those two situations and the one before us in this case. As noted above, giving a defendant credit for pretrial detention recognizes that the time served is directly linked to the conviction at issue. And in the case of concurrent sentencing, a defendant serves time on multiple offenses simultaneously, so that one cannot discern which offense he is being punished for at any given moment.

We therefore conclude that Hall did not actually serve any time for the two misdemeanor convictions in question. His misdemeanor convictions should thus not be counted in calculating his criminal history points pursuant to U.S.S.G. § 4A1.2(c)(1).

### III. CONCLUSION

For all of the reasons set forth above, we **REVERSE** the judgment of the district court and **REMAND** the case for resentencing consistent with this opinion.